**Donald Yannella, P.C.**
**Attorney at Law**
**7 Dey Street, Suite 803**
**New York, NY  10007**
--------------------------------
**(212) 226-2883**
**Admitted in NY & NJ**          **fax:  (212) 226-2861**

October 19, 2009

Hon. John F. Keenan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007

     Re:   US v Victor Melendez, Jorge Briones, et. al.
           08 Cr. 581 (JGK)

Dear Judge Keenan:

I am counsel for Jorge Briones, who is scheduled for sentencing on October 22, 2009.

**I.  PROCEDURAL HISTORY AND INDICTMENT**

Mr. Briones was arrested for narcotics possession on March 3, 2008 and prosecuted in Bergen County Superior Court, under complaint number 0290 W 2008 000220.   On April 4, 2008, he was transferred from the Bergen County Jail to the MCC in lower Manhattan.  On that day, he was presented in Magistrate's Court in the Southern District of New York for a conspiracy encompassing the Bergen County charges.  He has been detained ever since at the Metropolitan Correction Center.

On February 3, 2009, Mr. Briones pleaded guilty without a cooperation agreement to counts 1 and 3 of the indictment.  Count 1 charges conspiracy to possess and distribute five kilograms and more of cocaine, 21 USC §§ 812, 841 (b)(1)(A), and 846.  The statutory minimum term of imprisonment is 10 years and the maximum is life.  Count 3 charges possession with intent to distribute five hundred grams and more of cocaine, 21 USC §§ 812 and 841 (b)(1)(B).  The statutory minimum term of imprisonment is 5 years and the maximum is 40 years.

## II.  THE PLEA AGREEMENT AND PRESENTENCE INVESTIGATION REPORT

Using the November 2008 edition of the guidelines manual, the Plea Agreement stipulates:

**Grouping**:  Counts one and three are grouped, pursuant to U.S.S.G. § 3D1.2(d).

**Base Offense Level**:  Pursuant to U.S.S.G. §§ 2D1.1(a)(3) and 2D1.1(c)(2), the base offense level is 36 because the offense involved at least fifty kilograms, but less than one hundred and fifty kilograms, of cocaine.                                          **36**

**Acceptance of Responsibility**:  decrease by 2 points for acceptance and an additional 1 point for timely acceptance, § 3E1.1 (a) and (b)                                                                              **-3**

The offense level, therefore, is 33.

Mr. Briones' criminal history category is calculated as follows.  On December 3, 2003, Mr. Briones pleaded guilty to criminal possession of a controlled substance in the second degree, a Class A Felony, in New York

County Supreme Court.  A sentence of three years' to life imprisonment was imposed, and he was released on parole on February 17, 2006.  Pursuant to U.S.S.G § 4A1.1(a), this sentence results in three criminal history points.

Because Mr. Briones committed the instant offense while on parole, and less than two years after release from imprisonment, three criminal history points are added pursuant to U.S.S.G. §§ 4A1.1 (d) & (e).

With six criminal history points, Mr. Briones is in Criminal History Category III.  At offense level 33, this yields an advisory Guidelines range of 168 to 210 months.   The Plea Agreement allows Mr. Briones to seek a horizontal downward departure – seeking to be treated at Criminal History Category II – pursuant to U.S.S.G. § 4A1.3(b)(1).  The Plea Agreement stipulates that, aside from the horizontal downward departure application, neither side would seek other departures or a sentence outside the stipulated Guidelines range.

## III.  MOTION FOR DOWNWARD DEPARTURE FOR CRIMINAL HISTORY CATEGORY

The Sentencing Commission has made the extent of a defendant's prior criminal record an explicit determinant of the applicable sentencing range in order to promote the statutory purposes of the Sentencing Reform Act of 1984, especially the need "to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), and "to protect the public from further crimes of the defendant," *Id*. § 3553 (a)(2)(C).  See U.S.S.G. Ch. 4, Pt. A, intro. comment.  Toward this end, the Sentencing Table establishes six categories of criminal history.

"The Sentencing Commission recognized that in some cases the numerical formula by which points for prior sentences of different severity determine the applicable Criminal History Category might result in a

3

sentencing range that was either too lenient or too severe." *United States v. Mishoe*, 241 F.3d 214 (2nd Cir. 2001).  "There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit future crimes."  Id. § 4A1.3.  In that event, a court may "consider a downward departure from the guidelines." *Id*.

In departing, factors to be considered would include the nature of the prior offenses, "the sentence previously imposed, and the amount of time previously served compared to the sentencing range called by placement in [Criminal History Category] VI."  US v. Mishoe, 241 F.3d 214, 219 (2d Cir. 2001).

U.S.S.G. § 4A1.3 (b) (1) states:

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

By the book, Mr. Briones has 6 criminal history points and is in Category III.  However, all six points are derived from one prior conviction and the fact that the new offense was committed while on parole and less than two years after being released from prison.  Mr. Briones has been to jail only once previously, and that custodial term lasted less than three years.  After being released from the custody of the New York State Department of Corrections, he was placed on parole.  However, the parole supervision occurred in New Jersey because Mr. Briones was a resident of that state.

While Mr. Briones has gotten himself involved in two drug cases,

which have led to his New York State and federal convictions, he does not have an extensive criminal history.  He has no misdemeanor convictions, has never been on probation, and has never been convicted of a crime other than narcotics possession and distribution.  Mr. Briones is not a hardened criminal and can be rehabilitated.

Given that the statutory mandatory minimum sentence is 10 years and that the Guidelines recommend a much higher sentence, this federal sentence should provide more than enough deterrence to prevent him from committing new crimes in the future.  Mr. Briones is currently thirty-seven years old.  A sentence of 168 months would cause him to remain incarcerated until he is in his fifties.  Studies show that people in their forties and fifties are much less likely to commit crimes than people in their twenties or thirties.  Mr. Briones will not pose a danger to society upon his release from prison.

Another reason to believe that Mr. Briones will not pose a danger to society in the future is the fact that the federal prison sentence is causing him to be separated from his family for an extended period.  Although he did not "learn his lesson" after serving the New York State term of imprisonment, the federal sentence is much longer and has forced him to reexamine his priorities.  He is concerned that his mother and son will pass away while he is in federal custody, and he realizes that he can no longer get involved in narcotics.

Finally, Mr. Briones will be on supervised release when he is released from prison, which is more intensive that state parole.  The reporting requirements of federal supervision significantly diminish the likelihood that Mr. Briones will commit future crimes.

Pursuant to § 4A1.3, it would be appropriate to downwardly departure because CHC III substantially over-represents (1) the seriousness of Mr. Briones' criminal history, and (2) the likelihood that Mr. Briones will commit

other crimes.

## IV.  SENTENCING FACTORS PURSUANT TO 18 USC § 3553

In *Kimbrough v. United States*, 128 S.Ct. 558 (2007), the Supreme Court held that judges are free to impose a nonguidelines sentence on the basis of policy disagreements with the guidelines, such as the crack guidelines. While "[a] district judge must include the Guidelines range in the array of factors warranting consideration", the Court held, "[t]he judge may determine . . . that, in the particular case, a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing."  Id. at 564.

In *Gall v. United States*, 128 S.Ct. 586 (2007) the Court held that "while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences - whether inside, just outside, or significantly outside the Guidelines range - under a deferential abuse of discretion standard." *Id*. at 591.  The Court specifically "reject[ed] . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range."  *Id*. at 594-595.  To hold otherwise would "come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range." *Id*. at 595. Indeed, the Court held that the sentencing judge "may not presume that the Guidelines range is reasonable." *Id*. at 590.

Section 3553(a) of Title 18 requires a district court to "impose a sentence, sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" and to "consider" the following factors "in determining the particular sentence to be imposed":

(1) the nature and circumstances of the offense and the history and

characteristics of the defendant;

(2) the need for the sentence imposed -

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

The Guidelines are only one among a variety of statutory factors to be considered.

## § 3553 (a) (1):  "the nature and circumstances of the offense"

Mr. Briones helped the conspiracy by storing, delivering, and receiving shipments of cocaine and United States currency.  He has acknowledged responsibility for between 50 and 150 kilograms of cocaine.

On March 3, 2008, Mr. Briones was pulled over in New Jersey and consented to a search of his vehicle.  Law enforcement officers found $67,000 hidden in a pair of pants in a suitcase.  Mr. Briones consented to the seizure of that money and also consented to a search of his home in Palisades Park.  At his home, law enforcement officers seized $183,000 and approximately two kilograms of cocaine.

### § 3553 (a) (1):  "the history and characteristics of the defendant"

Born in New York City in 1972, Mr. Briones is currently 37 years old. His father abandoned the family shortly after his birth, and Jorge was raised by his mother, Patricia Rodriguez.  She had to work three jobs to support Jorge and his three siblings, and the family lived in poverty.  Due to financial difficulties, Jorge and one of his siblings were sent to live in Ecuador with family members for two years.

Jorge Briones attended George Washington High School in Manhattan, but left school during the 9th grade in order to work.  At that point, he was already 17 years old, and he had been left behind several times.

Mr. Briones' prior employment includes buying, repairing and selling automobiles.  Between April and December 2007, he worked at J.R. Auto Glass Company.  From January 2008 until his arrest in March 2008, he worked at Atomic Hearing, earning $450 per week.  Additionally, shortly before his arrest, he and his wife had purchased a company called Carib Auto Sales in New Jersey.  The company has since gone out of business.

Mr. Briones had two children with a woman named Ester Baez.  Jorge Briones, Jr., is an auto glass worker residing in the New York, and 11 year-old ███████ Briones lives with his mother in Florida.

Mr. Briones married Nancy Otero in 1999, and they have two children, ███████████ and ███████████.  Ms. Otero has a ███████████, from a prior relationship, who Mr. Briones has raised.  ███████████ has sickle cell anemia and is on a waiting list for a bone marrow transplant at Columbia Presbyterian Hospital.   Even if he has the transplant, there is a 50 percent mortality rate.  Attached as Exhibit A are letters from Columbia

Presbyterian Hospital.

Prior to his arrest, Mr. Briones lived in Palisades Park, NJ, with his wife, their three children, and his mother-in-law.

Mr. Briones' mother, Patricia Rodriguez, lives in the Bronx.  Jorge has a very close relationship with her, and she is distraught by her son's incarceration.  Ms. Rodriguez is disabled as a result of diabetes.  Attached as Exhibit B are letters from Mr. Briones' wife, mother, son, and a friend.

**§ 3553 (a) (2) (A), (B) and (C):  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant;**

Narcotics distribution is a serious offense, and Mr. Briones accepts responsibility for his crime.  However, a sentence in excess of ten years is more than sufficient punishment.

The motion for downward departure addresses the subjects of adequate deterrence and protection of the public from further crimes of the defendant.

**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Mr. Briones smoked marijuana as a youngster, but he stopped when he was 18 years old.  Prior to his arrest, he drank alcohol, usually Hennessy

or Remy Martin, at least every other day.

Mr. Briones left high school in the 9th grade and never got his GED. He hopes to obtain his GED at a  Bureau of Prisons facility.


**Conclusion**

Mr. Briones requests a downward departure to CHC II.  At offense level 33, in CHC II, the recommended range under the USSG is 151 to 188 months.

If the downward departure motion is denied, the stipulated range for CHC III at offense level 33 is 168 to 210 months.  The Probation Department recommends a sentence at the low end of the range, 168 months.

In order to be close to his wife, mother, and three children, Mr. Briones requests a recommendation that he be designated to a facility close to New York City.  Due to sickle cell anemia, his son cannot travel to high altitudes due to his sickle cell anemia.  Mr. Briones requests designation to a facility that is not at high altitude.


Sincerely,

Donald J. Yannella, Esq.


cc.  AUSA Michael Maimin

Certificate of Service

Donald Yannella, an attorney duly admitted to practice law in the United States District Court, Southern District of New York, affirms that today the attached document was served upon:

AUSA Michael Maimin
One St. Andrew's Plaza
New York, NY  10007
Via email

Dated:  October 19, 2009

Donald Yannella, Esq. (DJY-7350)